William F. Hahn, Jr., S.
Petitioner as sole surviving trustee of a variety of trusts under the will of the testator has asked the court to construe the provisions of the testator’s will affecting the distribution of the proceeds of the trusts created by the testator for the benefits of Mary O’Brien and Kate O’Brien.
Both Mary O’Brien and Kate O’Brien have died and the funds held in trust for them during their lives are now distributable. A controversy has arisen over whether the remainder interests following their life interests vested at the time of their deaths or the death of the testator.
The Mary O’Brien trust is set up and the distribution provided for in subdivision 2 of paragraph “ third” of the will. The Kate O’Brien trust is set up in subdivision 1 of paragraph “ third” and the distribution is provided for in subdivision 6 of paragraph 1 ‘ third ’ ’.
The paragraph “ third ” in question is the residuary clause of the testator’s will and in all provided for five separate trusts; four to terminate upon the death of individual life beneficiaries and the fifth — a joint trust for a husband and wife — to terminate upon the death of the survivor.
Paragraph “second” and the portions of paragraph “third” providing for the trusts and their distribution are set fourth below. Irrelevant material has been eliminated and the excisions indicated with asterisks. The words parenthesized are my own and are included for informative reasons.
*485 “ second. I hereby give, devise and bequeath my residence known as No. 122 Rosa Road in the City of Schenectady, New York, and all my wearing apparel, jewelry, silverware, pictures, books, works of art, household furniture and furnishings, all my equipment in connection with my profession, and my automobiles, to my wife, hate o’brien, absolutely, or if she fails to survive me, to my brother, thomas o’brien of Mount Vernon, New York, or if both my wife and my brother fail to survive me, then to the children of my said brother thomas who survive me.
11 third. All the rest, residue and remainder of my property * * * I hereby give, devise and bequeath to my executors hereinafter named, in trust nevertheless, for the following uses and purposes, namely:—
“ 1. If my said wife, Kate O’Brien, survives me, the trustees shall hold the entire said rest, residue and remainder, less, however, the sum of twenty thousand dollars ($20,000.00) and a further sum of twenty thousand dollars ($20,000.00) and a further sum of twenty thousand dollars ($20,000.00) and a further sum of ten thousand dollars ($10,000.00) being a total of seventy thousand dollars ($70,000.00), which sums are hereinafter set up as separate and distinct trusts, for and during the natural life of my said wife, Kate O’Brien, and pay the net income to her.
“ 2. The sum of twenty thousand dollars ($20,000.00), shall be a trust fund, the interest thereof shall be paid during her natural life to my wife’s sister, mary o’brien, and a like sum shall form a trust fund, the interest thereof shall be paid to my wife’s sister, Margaret o’brien, during her natural life. At the death of said beneficiaries the said sums shall be paid to the children of my said brother, thomas, then living per capita.
“ 3. The sum of twenty thousand dollars ($20,000.00), the trustees shall hold as a separate and distinct trust fund for my friend, Judge alvah fairlee of Schenectady, New York, during his natural life, and upon his death, or upon my death, if he fails to survive me, said sum shall be added to the trust fund for my brother thomas o’brien, if such trust fund is then in existence. If such trust fund is not then in existence, then the trustees shall distribute the principal of this trust equally among the then living children of my brother, thomas o’brien.
“ 4. The above fund of ten thousand dollars ($10,000.00), the trustees shall hold as a separate and distinct trust fund for my friend, edward keigher of No. 121 Avenue A, Schenectady, New York, and his wife, during the life of the survivor of them, and upon the death of the survivor of them, or upon *486 my death, if neither of them survives me, the trustees shall distribute the corpus of this trust equally among the children then living of my brother, thomas o’bribe, per capita.
“ 5. [Alternative Thomas O’Brien trust — never set up].
“ 6 Upon the death of my said wife, kate o ’bribe and brother, thomas o’bribe, the said trust fund shall be paid to my said brother thomas’ children equally per capita. For the purposes of this instrument all my estate shall be deemed personal property.
“ 7. [Power of invasion].”
Note: Paragraph “ third ” ends with subdivision 7.
Upon the death of the testator each of the five trusts were set up with the widow, Kate O’Brien, and the petitioner as trustees.
All six of the life beneficiaries are now deceased. The proceeds of three trusts have been distributed. The remaining two can now be distributed and the petitioner can finally terminate its trust responsibilities.
No conflict arose over the distribution of the first three trusts. These I will refer to as the Margaret O’Brien, Alvah Fairlee, and the Edward and Mary Keigher trusts.
The remaindermen in all five trusts were the children of testator’s brother, Thomas. There were three such children when the will was executed. The three survivied the testator. They survived the life beneficiaries, Alvah Fairlee and the joint life beneficiaries, Edward and Mary Keigher.
In the two distributions following the deaths of the life beneficiaries, Alvah Fairlee, Edward and Mary Keigher, the proceeds of the trusts were divided equally among the three children and there was no occasion for dispute.
The three children were named Thomas Cyrus, Helen and Mary. Only Mary now survives. First Helen died and then Thomas Cyrus. Both died without issue.
As aforesaid, Helen shared in the first two distributions. She died testate and left her entire estate to her sister, Mary.
After Helen’s death, the life beneficiary, Margaret O’Brien, died. The children, Thomas Cyrus and Mary were living. The proceeds of the Margaret O’Brien trust were divided equally between Thomas Cyrus and Mary. This division was in accordance with the directions of a decree which concluded an accounting proceeding. Thomas Cyrus had been cited, Mary executed a waiver. There was no controversy over the equal distribution proposed by the trustees in their account of proceedings. Thomas Cyrus and Mary entered into a written agreement for an equal distribution.
*487 Thomas Cyrus died next — predeceasing the life beneficiaries, Mary and Kate O’Brien. Both said beneficiaries are now deceased and the impending distribution of the proceeds of their trusts gives rise to the problems of construction before the court.
The controversy is between Mary and the executors of the estate of Thomas Cyrus. Mary claims the entire amount of the two funds and the executors claim one third of each fund.
The said executors contend that the remainder interests of the three said children, Helen, Thomas Cyrus and Mary, vested upon the testator’s death. Mary claims that the interests were contingent upon survivorship of the life beneficiaries and vested only upon the death of each life income beneficiary. Consequently, she being the only one of the said three children to outlive Mary O ’Brien and Kate 0 ’Brien, she claims the entire amount of the funds.
The plan of the will was to provide comfortable support and maintenance for testator’s widow during her lifetime, and in the alternative, for the testator’s brother, Thomas; comfortable support and maintenance for the testator’s friends, Fairlee and the Keighers, and also his spinster sisters-in-law, Mary and Margaret O’Brien. The will permitted invasion of principal of each trust to accomplish these purposes. Ultimate distribution of the trust funds was to the children of testator’s brother, Thomas.
As aforesaid, the three children shared in the distribution of the proceeds of two of the funds. Two shared the third fund. Does Mary get all of the last two funds or must she yield a third of each to the estate of Thomas Cyrus and be content with her own third and the third inherited from her sister, Helen? Further, because of dissimilar language of gift, should there be one mode of distribution or two?
The solution of the questions involved herein was not an easy one. Counsel for the litigants have been of great assistance. Both have exhaustively researched the points of law involved and have submitted voluminous briefs.
No legal question has been more productive of litigation and divergent judicial views than the vesting of estates. No problem of construction is more difficult to resolve. Since no two wills are alike it is impossible to find a previous decision “ on all fours ”. Wills with almost identical language are variously construed by the courts and there is seldom unanimity of thinking in the appellate courts. Canons of construction are used and misused to buttress conflicting decisions. Any number of cases cited *488 as authorities for a decision can be matched by an equal number to support an opposite holding.
Out of the welter of legal confusion there emerges one uniformly recognized rule of construction which supersedes all others. The intention of the testator is supreme and where ascertainable from the language of a will and the conditions surrounding the testator at the time of execution of his will, it must prevail over all -canons of construction.
To ascertain the testator’s intention with regard to the gifts in question we must place ourselves in his situation at the time he executed his will.
The testator was married but childless. He had one brother and two spinster sisters-in-law. Thomas, the brother, had two daughters and a son. Two were in their 30s and one was over 40. All were unmarried. It is reasonable to infer that the testator was fond of the children since they were the most favored by the will.
Did the testator intend that only the children who survived the life beneficiaries, Mary and Kate O’Brien, should share in the distribution of their trust funds í I think that he did. He expressed his wishes and directions with clarity and there can be no other construction of his language pertaining to the remainder gifts.
These are class gifts to be taken only by the children alive at the termination of each trust. Such would be the operation of the “ divide and pay over ” rule if recourse to it were needed to discover the testator’s intention.
The Mary O’Brien trust terminated upon her death. The remainder gift then took effect. The children of Thomas “ then living ” took the gift. Survivorship of the life beneficiary was a condition attached to the gift. No other construction is warranted.
The testator, although he did not practice, was a lawyer. Judge Alvah Faiklee, the testator’s friend and draftsman of the will, was a practicing lawyer. Strict interpretation must be given to the language chosen by this combination to express the testator’s testamentary wishes. When they used the word “ children ” to designate donees they meant children and not their descendants or representatives.
The Latin phrase “ per capita ” following the phrase 11 then living ” was used to specify equality of division among children of Thomas. -Had the lawyer combination intended any less immediate donees to take they would have provided for a per stirpital gift to the remoter class.
*489 The Kate O’Brien trust terminated upon her death and this was the time of distribution. The remainder gift then took effect. Again, the word “ children ” is used. Again the phrase “ per capita ” is used. This time the word “ equally ” is used in combination with “ per capita”. The terms complement one another and indicate beyond contradiction that the testator wanted no donees farther removed than children to participate in the distribution.
Substitutional gifts to issue of children or their representatives were not provided. The omission to do so is significant. Had such gifts been intended these lawyers would have so worded the language of gift. Doubtless, possible intestacy was considered but dismissed as a contingency too remote to happen because of the number of the children. Time has borne out the wisdom of their judgment. There is no intestacy here.
If any doubt remains as to the testator’s intentions as to the remainder gifts on termination of the Mary and Kate O’Brien trusts, recourse to other sections of the will for enlightenment dispels any remaining vestige of uncertainty.
The testator attached conditions of survivorship to the other gifts which he made to the children in the will.
Having the three children of Thomas in mind, he made an alternative gift in paragraph “second” only to those who survived him.
Again, in subdivision 3 of paragraph “third” he made a gift to the children who survived him or Judge Fairlee.
Again, in subdivision 4 of paragraph “third” he made a gift to the childen who survived him or the Keighers.
It is clear that he intended that if these life beneficiaries lived to enjoy their trusts only the chilren who survived them could take. In these clauses we also find the words and phrases “ equally ”, “ then living ” and “ per capita ” which were used in the provisions for distribution following the Mary and Kate O’Brien trusts.
Summarizing my position therefore, it is my opinion that the gifts to the children of Thomas following all the trusts in the testator’s will were gifts to a class with the members of the class determinable upon the death of the life beneficiary and only those of the class then living could take. We are concerned herein, of course, with only the Mary and Kate O’Brien trust funds, the last two to be distributed.
The question of whether the doctrine of res judicata applies to either or both of the distributions becomes academic in view of my above holding and I have not passed upon the same.
*490 Two wills with language somewhat similar to the O’Brien will were construed by this court, the Appellate Division and Court of Appeals. (See Matter of Curtis, 252 App Div. 256, affd. 278 N. Y. 589; Matter of Barnes, 126 N. Y. S. 2d 83, affd. 286 App. Div. 346, affd. 2 N Y 2d 787.)